# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| CALVIN TERRY SCHANUTH and | ) | Case No. 06-40056 |
| DONNA JANE SCHANUTH, | ) | |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION

In a case filed under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"):[1]

Can the Court confirm a plan that proposes a payment in excess of a debtor's disposable income calculated in accordance with 11 U.S.C. § 1325(b)(2)?

Can the Court confirm a chapter 13 plan that runs less than three years?

Those are the issues before the Court today. The Debtors' chapter 13 plan proposes to do both of those things. The chapter 13 trustee has filed a motion to deny confirmation of the plan.

## BACKGROUND

The Debtors, Calvin Terry Schanuth and his wife, Donna Jane Schanuth, filed for protection under chapter 13 of the Bankruptcy Code, as amended by BAPCPA, on January 5, 2006. Richard V. Fink is the standing chapter 13 trustee ("Trustee").

At the time of filing, the Debtors filed bankruptcy schedules, including a statement of income (Schedule I) and a statement of expenses (Schedule J), as well as a statement of "current monthly income" ("CMI") on Form B22C.[2] According to Schedule I, the Debtors have a net monthly income of $1,924: Mr. Schanuth receives $819 in social security disability income and Mrs. Schanuth earns $1,105.84. According to Form B22C, however, their income is only $1,655.50. This figure is based solely on the

---

[1] Unless otherwise noted, all Bankruptcy Code references herein are to the Code as amended by BAPCPA. Most of the BAPCPA provisions took effect on October 17, 2005.

[2] Form B22C is required by Local Rule 1007(b)(6), which was enacted to implement BAPCPA.

average of Mrs. Schanuth's gross monthly income earned in the six months prior to the bankruptcy, and, as discussed in greater detail below, does not include Mr. Schanuth's social security income. The Debtors' expenses also differ depending on whether Schedule J or Form B22C is viewed. According to Schedule J, the Debtors have monthly expenses of $1,632, whereas Form B22C shows that their expenses are $2,319. These figures differ because Schedule J is a report of actual expenses, whereas Form B22C calculates a debtor's expenses largely by reference to I.R.S. national and local standards which, in this case, exceed the Debtors' actual expenses in several categories.[3]

Using the income and expenses from Form B22C, the Debtors calculate that they have no disposable income. (The Debtors actually contend that their expenses exceed their income by $639.) The Debtors' plan, which is based on this ostensible lack of disposable income, nevertheless provides for approximately 22 monthly payments of $300 – just enough to pay the arrearage on their home mortgage (between $3,300 and $4,534.51), attorney's fees ($1,689), and Trustee's fees (approximately $300). Upon satisfying those debts and obligations, the Debtors do not intend to make any further contributions to their plan, a course of action they believe is justified under 11 U.S.C. § 1325(b).

## DISCUSSION

Before delving into the two issues set out in the introduction, it is necessary to pin down the proper statement of disposable income to be used in the analysis – a relatively straightforward task despite the parties' disagreement on this point. The Debtors maintain that Form B22C should be used to calculate the Debtors' income and expenses, and by doing so, they have a disposable income of negative $693. The Trustee, on the other hand, argues that Schedules I and J should be used to calculate the Debtors' disposable income, and that by using those figures the Debtors have a disposable income of $292.84.[4] Both are partially wrong.

---

[3] *See* this Court's decision in *In re Renicker*, 2006 WL 1331487 (Bankr. W.D. Mo. 2006), for a more detailed explanation of the computation of a chapter 13 debtor's expenses under BAPCPA.

[4] Thus, according to the Trustee, the Debtors' plan must provide for payment of that income for 36 months and the issue of a shorter plan is moot.

Under § 1325(b)(2), disposable income is calculated by deducting the "amounts reasonably necessary" for the maintenance or support of the debtor or the debtor's dependents from a debtor's "current monthly income." "Amounts reasonably necessary" and "current monthly income" are defined terms in the Code.

"Amounts reasonably necessary," *i.e.*, expenses, are determined in one of two ways. For a debtor whose current monthly income is below the median family income for the applicable state, such as these Debtors,[5] "amounts reasonably necessary" refers to the expenses that the court determines are reasonably necessary for the maintenance or support of the debtor or the debtor's dependents.[6] These expenses are typically the ones listed on Schedule J. For a debtor whose income is above the median family income for the applicable state, expenses are determined "in accordance with subparagraphs (A) and (B) of section 707(b)(2)."[7] Section 707(b)(2), a provision now commonly known as the "means test," determines expenses in large part by reference to uniform standard expenses promulgated by the I.R.S. for use in its debt collection efforts. An above-median income debtor calculates these expenses on Parts IV and VI of Form B22C.

"Current monthly income" ("CMI") is defined in § 101(10A) as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)" during the 6-month period prior to the commencement of the bankruptcy case.[8] Section 101(10A)(B) specifically excludes certain types of income from CMI, including (notably in this case), "benefits received under the Social Security Act." CMI is reported in Part I of Form B22C.

---

[5] The median annual income in Missouri for a two-person family is $46,144; the Debtors' annual income is $19,866 (CMI x 12).

[6] 11 U.S.C. § 1325(b)(2)(A)(i).

[7] 11 U.S.C. § 1325(b)(3).

[8] 11 U.S.C. § 101(10A)(A)(i) and (ii).

3

Looking to the forms and facts of this case, under §1325(b)(2), the Debtors have a disposable income of $23.50, calculated by deducting the Debtors expenses listed on Schedule J ($1,632) from the Debtor's CMI, reported in Part I of Form B22C ($1,655.50).[9]

*The Debtors' Plan is Not Feasible*

Putting aside for a moment the issue of whether a chapter 13 plan can run less than three years, the Debtors' plan cannot be confirmed for the simple reason that it is not feasible due to a lack of disposable income.[10] Under the plan proposed by the Debtors, they will make monthly payments of $300 for approximately 22 months, but according to the Court's calculation of the Debtors' disposable income pursuant to § 1325(b)(2), the Debtors have only $23.50 in disposable income available to fund a chapter 13 plan. (The situation is even worse if the Debtors' proposed disposable income figure of negative $693 is used.)

The law on this point is clear – if a debtor's monthly plan payment exceeds the debtor's disposable income, that plan is not feasible and cannot be confirmed.[11] So, in this case, the Debtors' plan cannot be confirmed regardless of whether it runs 22 months or 36 months.

That being said, the Debtors are not foreclosed from filing an amended plan based on their actual income reported on Schedule I, which income includes Mr. Schanuth's social security benefits. Deducting the expenses reported on Schedule J ($1,632.00) from that income ($1,924.84), the Debtors have an apparent disposable income of $292.84, which would be sufficient to pay off the arrearage on their home mortgage, pay attorney's fees, pay the trustee's fee, *and* provide a dividend to the unsecured creditors

---

[9] The Trustee has not challenged, nor has the Court found, that the Debtors' expenses listed on Schedule J are not reasonably necessary for the maintenance or support of the Debtors.

[10] Although the Trustee did not specifically object to the feasability of the Debtors' plan, the Court properly reaches that issue *sua sponte*. *See In re Ives*, 289 B.R. 726, 728-29 (Bankr. D. Ariz. 2003) (holding that the court has the responsibility to ensure plan compliance with the Bankruptcy Code even in the absence of an objection); *In re Miller*, 247 B.R. 795, 796-98 (Bankr. W.D. Mo. 2000).

[11] *See e.g.*, *In re Sully*, 223 B.R. 582, 585-86 (Bankr. M.D. Fla. 1998) (plan not feasible where expenses exceeded income); *In re Wilkinson*, 99 B.R. 366 (Bankr. N.D. Ohio 1992) (same).

(since, as discussed below, the Debtors must make plan payments for the entire duration of the 3-year "applicable commitment period"). In light of 11 U.S.C. § 101(10A)'s explicit exclusion of social security benefits from the calculation of CMI, however, the Court cannot compel the Debtors to include those benefits in their calculation of disposable income.[12] But there is nothing in the statute that precludes the Debtors from voluntarily devoting a portion of that income to a chapter 13 plan or that prevents the Court from considering that income in evaluating the feasibility of a plan proposed by the Debtors. If the Debtors do indeed propose such a plan, as the Court holds below, that plan will need to provide for payments continuing over the entire duration of the 3-year applicable commitment period.

*Section 1325(b)(4) – Applicable Commitment Period*

How long must a chapter 13 plan be under BAPCPA? Interestingly, both parties have raised this issue, but neither has taken a position on it.[13]

Under pre-BAPCPA practice, in the face of an objection to confirmation by an unsecured creditor or the trustee, § 1325(b)(1) required a debtor to devote all of the debtor's disposable income to the plan for a minimum of three years.[14] Occasionally, a debtor would exit chapter 13 early by refinancing a home or otherwise raising additional funds, but the "payoff" to get out of chapter 13 before the end of three years was always the same – payment in full of the unsecured claims. BAPCPA, however, replaced the fixed

---

[12] This result does not conflict with the well reasoned conclusion in *In re Jass*, 2006 WL 871235 (Bankr. D. Utah 2006), wherein Judge Thurman concluded that CMI is presumed to be representative of the debtor's projected income, unless it is shown that CMI does not accurately reflect a debtor's "projected," *i.e.*, prospective income. In this case, the debtor's actual income, which includes Mr. Schanuth's social security benefits, is certainly higher than the income reflected in the Debtors' CMI. However, the Court does not believe it is appropriate to disregard CMI in this instance where the additional income offered to rebut CMI's accuracy is derived from a source that 11 U.S.C. § 101(10A)(B) specifically excludes from the calculation of CMI.

[13] As discussed below, the Debtors don't care how long the plan has to run because they propose to pay nothing after 22 months, and the Trustee has not taken a position on the issue – he just wants clarification from the Court on how § 1325(b)(4) should be interpreted.

[14] 11 U.S.C. § 1325(b)(1) (West 2005) (Pre-BAPCPA).

5

3-year commitment in § 1325(b)(1)(B) with a new concept – the "applicable commitment period" ("ACP"), which is defined in § 1325(b)(4). Under § 1325(b)(4)(A), if a debtor's income is below the average median income for the applicable state, the debtor's ACP is 3 years; if the debtor's income is above the applicable median income, then the debtor's ACP is 5 years.[15] Section 1325(b)(4)(B) adds that a debtor's ACP "may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period."

On its face, BAPCPA's only apparent change to minimum plan length is the creation of a two-tiered system based on a debtor's income. But some bankruptcy commentators,[16] as well as the Debtors and Trustee in this case, suggest that BAPCPA's revisions to § 1325(b)(1) and (4) may have opened the door to chapter 13 plans that run less than 3 (or 5) years. The theory posited is that ACP is a multiplier rather than a time period, a "monetary" versus "temporal" requirement, if you will. Those who advance the "monetary" interpretation of ACP, suggest that the language in § 1325(b)(1)(B) requiring that "all of the debtor's projected disposable income *to be received in the applicable commitment period . . .* " be devoted to a plan contemplates the projection and calculation of a fixed sum based on a debtor's disposable income[17] multiplied by the length of the ACP, which would be "3 years" (36 months) for below-median income debtors and "5 years" (60 months) for above-median income debtors. And that the applicable commitment "amount" (for lack of a better term) can supposedly be paid off in less than 36 (or 60) months without violating § 1325(b)(4)(B).

The Debtors in this case have proposed a plan than lasts less than 3 years (approximately 22 months); however, they do not rely on a monetary interpretation of ACP. Instead, they rely on the "fact" that they have no disposable income, and therefore contend that the length of their plan is irrelevant. Whether their plan ends in 22 months as they have proposed, or they pay "nothing" for an additional 14

---

[15] 11 U.S.C. § 1325(b)(4)(A)(I) and (ii).

[16] *See, e.g.*, Alane A. Becket and Thomas A. Lee, III, *Applicable Time Commitment: Time or Money?* 25 Amer. Bank. Inst. J. 2, 16 (2006).

[17] Calculated under § 1325(b)(2) for below-median income debtors and under § 1325(b)(3) for above-median income debtors.

6

months and exit chapter 13, having fulfilled the 3-year commitment ostensibly required by § 1325(b)(4), the unsecured creditors will receive the same amount – zero. Because the Court has already found that the Debtors' plan is not feasible and therefore cannot be confirmed, the issue of plan length is largely moot; nevertheless, the Court believes that the issue of whether ACP is a temporal or monetary concept is ripe for determination inasmuch as resolution of that issue will provide the Debtors (in this case and others) with necessary guidance in the event they choose to amend their plan to include Mr. Schanuth's social security income.

The Court rejects the monetary interpretation of ACP for three reasons.

First and foremost, the plain language of § 1325(b)(1) and (4) supports a temporal interpretation of ACP. The term itself, "applicable commitment period," uses a word with temporal meaning: "period" means a "chronological division."[18] The length of that chronological division is described in temporal terms – 3 *years* or 5 *years*.[19] And, perhaps most telling of all, § 1325(b)(4)(B), the provision that specifically contemplates plans shorter than 3 or 5 years, uses the same temporal terms – a debtor's ACP "may be less than 3 or 5 *years*...but only if the plan provides for payment in full of all allowed unsecured claims over a shorter *period*." If Congress had intended for ACP to function as a multiplier, Congress surely could have described it as such; in fact, evidence of that ability is found earlier in the very same provision where the statute requires a 5-year ACP for a debtor whose current monthly income, "when multiplied by 12," is not less than the applicable median family income.[20]

When a statute's language is plain, the sole function of the court is to enforce it according to its terms.[21] Here, the Court finds that the plain language used to describe and define the scope of the commitment a debtor must make of disposable income in a chapter 13 plan clearly indicates that that commitment is temporal in nature.

---

[18] Definition 7a, http://www.merriamwebster.com/dictionary/period.

[19] 11 U.S.C. § 1325(b)(4)(A).

[20] 11 U.S.C. § 1325(b)(4)(A)(ii).

[21] *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

7

Second, a monetary interpretation of ACP renders § 1325(b)(4)(B) awkward, if not meaningless. To wit, if ACP is a monetary concept, then § 1325(b)(4)(B) would ostensibly require a debtor to multiply his monthly disposable income times 36 or 60 unless multiplying by a lesser number results in full payment of the debtor's unsecured claims. In other words, for debtors whose disposable income times 36 equals more than the allowed unsecured claims, the ACP "amount" equals the amount of allowed unsecured claims. Under this interpretation of ACP, § 1325(b)(4)(B) doesn't really state anything more than that a debtor does not have to pay more than 100% on his unsecured claims.

Admittedly, the ultimate outcome would not be altogether different under a temporal interpretation of ACP with § 1325(b)(4)(B) essentially stating that a debtor does not have to be in chapter 13 any longer than it takes to pay in full all allowed unsecured claims. But the syntax resulting from a temporal reading of § 1324(b)(4)(B) is far more logical. A monetary interpretation of ACP renders §1325(b)(4)(B) more tautological than substantive – *i.e.*, the amount a debtor has to pay under a chapter 13 plan cannot exceed the amount a debtor may pay under a chapter 13 plan. By contrast, a temporal interpretation of ACP allows § 1325(b)(4)(B) to convey real meaning by integrating two separate concepts – time and money; an *amount* (full payment of allowed unsecured claims) modifies the otherwise mandatory *duration* of a chapter 13 plan. In the end, the Court sees no reason to engage in the legal and linguistic gymnastics required by a monetary interpretation of ACP when a temporal interpretation is logical and consistent with the plain language of the statute.

Finally, as a practical matter, a monetary interpretation of ACP represents a gross departure from pre-BAPCPA practice that is not justified by the language or structure of the statute.[22] Prior to BAPCPA's enactment, debtors could not exit chapter 13 in less than three years without paying in full the allowed unsecured claims. BAPCPA's revision of §1325, albeit significant, has not changed this tenet of pre-BAPCPA practice. Quite simply, the plain language of § 1325 dealing with applicable commitment period indicates that plan duration is still determined by temporal, not monetary, requirements. And the Court

---

[22] *See Cohen v. de la Cruz*, 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("We . . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.") (citation omitted).

declines to abandon the temporal framework for determining plan duration without clear instructions from Congress to do so.

## CONCLUSION

The Debtors' plan in this case cannot be confirmed for two reasons: 1) it proposes a monthly payment far in excess of the Debtors' disposable income, so it is not feasible, and 2) it proposes a plan length of less than 36 months in violation of § 1325(b)(4). Therefore, the Court will sustain the Trustee's motion to deny confirmation of the Debtors' chapter 13 plan and will give the Debtors 20 days to propose an amended plan.

A separate order sustaining the Trustee's motion will be entered pursuant to Fed. R. Bank. P. 9021.

ENTERED this 25th day of May 2006.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Richard V. Fink
Robert N. Calbi